# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-11-00338-CV

**Greg Abbott, in his Official Capacity as Governor of the State of Texas; Kyle Janek, in his Official Capacity as Executive Commissioner of the Texas Health and Human Services Commission; Jon Weizenbaum, in his Official Capacity as Commissioner of the Texas Department of Aging and Disability Services; Laura Cazabon-Braly, in her Official Capacity as Director of the Austin State Supported Living Center; Mike Davis, in his Official Capacity as Director of the Mexia State Supported Living Center; and Gale Wasson, in her Official Capacity as Director of the Lufkin State Supported Living Center, Appellants**

**v.**

**G.G.E, E.M.B, and G.D.E. through their next friend, Geoffrey Courtney; and Disability Rights Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GN-11-000273, HONORABLE TIM SULAK, JUDGE PRESIDING

## O P I N I O N

In this interlocutory appeal, Appellants Greg Abbott, in his official capacity as Governor of the State of Texas; Kyle Janek, in his official capacity as Executive Commissioner of the Texas Health and Human Services Commission (HHSC); Jon Weizenbaum, in his official capacity as Commissioner of the Texas Department of Aging and Disability Services (DADS); Laura Cazabon-Braly, in her official capacity as Director of the Austin State Supported Living Center; Mike Davis, in his official capacity as Director of the Mexia State Supported Living Center;

and Gale Wasson, in her official capacity as Director of the Lufkin State Supported Living Center (collectively, State Defendants)[1] appeal the trial court's denial of their plea to the jurisdiction.

Appellees G.G.E., E.M.B., and G.D.E. (the Individual Plaintiffs), through their next friend Geoffrey Courtney, and Disability Rights Texas (DRTx) (collectively Plaintiffs) filed suit asserting: (1) procedural due course of law claims under the Texas Constitution based on the continued confinement of the Individual Plaintiffs in state supported living centers (SSLCs) without periodic judicial review of their commitment orders; and (2) claims for substantive due course of law violations under the Texas Constitution and violations of the Persons with Mental Retardation Act (PMRA) based on the State Defendants' failure to provide the Individual Plaintiffs with community referrals, despite the judgment of their treatment teams that they could live in less restrictive environments. The State Defendants filed a plea to the jurisdiction challenging the Plaintiffs' standing and asserting other jurisdictional claims. For the reasons that follow, we affirm the trial court's denial of the plea to the jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

SSLCs (formerly State Schools) are state-supported residential facilities operated by DADS to provide a continuum of services to persons with mental retardation, including medical care, specialized therapy, and training in the acquisition of personal, social, and vocational skills.[2]

---

[1] The notice of appeal and prior filings in the trial court reference the former Governor, Commissioners of HHSC and DADS, and the former Directors of the Austin and Mexia SSLCs. Pursuant to Texas Rule of Appellate Procedure 7.2, the successors to these public officials have been automatically substituted as parties to this litigation. *See* Tex. R. App. P. 7.2(a).

[2] Weizenbaum, as the executive commissioner of DADS, reports to Janek, as the executive commissioner of HHSC, the umbrella agency over a number of health and human service agencies,

*See* Tex. Health & Safety Code § 531.002(17).  Involuntary commitment to an SSLC is governed by chapter 593 of the PMRA.  *See generally id.* §§ 593.001–.093.  Under the PMRA, a proposed resident receives a judicial hearing with legal representation and may not be committed unless the trial court determines the proposed resident is a person with mental retardation and because of the disability, the person:  (1) presents a substantial risk of physical impairment or injury to himself or others; or (2) is unable to provide for and is not providing for his most basic personal physical needs; and (3) cannot be adequately and appropriately habilitated in an available less restrictive setting and the residential care facility provides habilitative services, care, training, and treatment appropriate to the proposed resident's needs.  *Id.* §§ 593.043, .048–.052.

Once a trial court issues a commitment order, the length of an adult's involuntary commitment to an SSLC is indefinite and will not be automatically reviewed again by the issuing court.  *See id*. §§ 593.052 (no specified term for involuntary commitment order), 594.001–.019 (no provision for post-commitment judicial review of commitment order).[3]  The PMRA does, however, provide that a person with mental retardation has the right to live in the least restrictive setting appropriate to the person's individual needs, and that a resident of an SSLC should be discharged or transferred if the resident's placement is no longer appropriate to the person's individual needs or the resident can be better treated and habilitated in another setting and placement in another setting has been secured.  *Id.* §§ 592.013, 594.011.

including DADS.  *See* Tex. Gov't Code § 531.001(4).  Cazabon-Braly, Davis, and Wasson, as directors of SSLCs, are responsible for the administration of the SSLCs in compliance with applicable statutes and regulations.  *See* Tex. Health & Safety Code § 551.0225.

[3]  The PMRA does not alter or limit a resident's right to obtain a writ of habeas corpus. *Id*. § 594.003.

Although the PMRA itself does not provide review procedures to assess the appropriateness of a resident's continued commitment, DADS has developed internal review procedures to assess whether a resident should remain in an SSLC or move to an alternate living arrangement. *See* 40 Tex. Admin. Code §§ 2.274 (2009) (Tex. Dep't of Aging & Disability Servs., Consideration of Living Options for Individuals Residing in State MR Facilities), 2.275 (2001)(Tex. Dep't of Aging & Disability Servs., Accessing Alternative Living Arrangements for an Individual Residing in a State MR Facility Who Has the Ability to Provide Legally Adequate Consent or Has a Legally Authorized Representative), 2.276 (2006) (Tex. Dep't of Aging & Disability Servs., Accessing Alternative Living Arrangements for an Individual Residing in a State MR Facility Who Does Not Have the Ability to Give Legally Adequate Consent and Who Does Not Have a Legally Authorized Representative).

Under the internal review procedures, each resident is assigned an interdisciplinary team (IDT) which meets at least annually to assess whether the SSLC is the most appropriate living arrangement for the individual and to provide a recommendation as to whether the individual should remain in the SSLC or move to an alternative living arrangement. *Id*. §§ 2.274(g)(4), 2.275–.276. Members of the IDT include, at a minimum, the resident, the resident's legally authorized representative, if any, and the professional and direct care staff of the SSLC who provide services to the resident. *Id*. § 2.253(20) (Texas Dept. of Aging and Disability Servs., Definitions). A determination by an IDT that a resident could live in a less restrictive environment does not guarantee a resident the right to move from an SSLC, however, as the resident's IDT must also

4

provide a recommendation for community referral and the IDT and SSLC must then comply with numerous procedures to complete the formal referral process. *Id*. §§ 2.275–.278.

The Individual Plaintiffs are persons with intellectual disabilities, *see* Tex. Health & Safety Code § 591.003(15-a), who have been confined to SSLCs for many years.[4] G.G.E. and G.D.E. were voluntarily committed by their parents when they were minors and later involuntarily committed as adults under the Mentally Retarded Persons Act of 1977.[5] E.M.B. was involuntarily committed in 1951 at the age of six after being adjudged "feeble-minded" by the Dallas County Court. None of the Individual Plaintiffs has had a judicial review of his or her commitment order since being involuntarily committed. According to the Plaintiffs' pleadings, the IDTs for the Individual Plaintiffs have determined that their respective needs could be met in a less restrictive environment, but to date none has been discharged through a community referral.

**Prior Department of Justice Investigation**

In March 2005, pursuant to its authority under the Civil Rights of Institutionalized Persons Act, *see* 42 U.S.C. § 1997a, the United States Department of Justice began an investigation of conditions at the Texas SSLCs. As a result of the investigation, the United States filed a lawsuit against the State of Texas alleging conditions at the SSLCs violated federal law. The lawsuit culminated in a settlement agreement (Consent Decree) approved by the United States District Court

---

[4] G.G.E. has been confined for more than 40 years, E.M.B. for more than 60 years, and G.D.E. for more than 38 years.

[5] Act of May 12, 1977, 65th Leg., R.S., ch. 294, § 37, 1977 Tex. Gen. Laws 772, 783–789, *repealed by* Act of Apr. 29, 1991, 72nd Leg., R.S., ch. 76, § 1, 1991 Tex. Gen. Laws 515, 647–48 (current version at Tex. Health & Safety Code § 593.052.)

for the Western District of Texas in 2009. The Consent Decree requires the State to make many changes at SSLCs, including detailed provisions for planning, carrying out, and following up on the movement of residents from SSLCs to community placements. The Consent Decree additionally called for professional monitors to inspect each SSLC twice a year to assess progress. The record does not contain the results of these inspections, but the parties appear to agree that the SSLCs have not reached full compliance with the terms of the settlement agreement.

**Current Litigation Commenced**

DRTx is a nonprofit protection and advocacy organization created under the federal Protection and Advocacy for Mentally Ill Individuals Act, *see id*. §§ 10801–10851, and the Developmental Disabilities Assistance and Bill of Rights Act, *see id*. §§ 15041–15045, which, as a condition of federal funding, must "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State." *Id*. § 10805(a)(1)(B). Through its work, DRTx learned of the commitment circumstances of the Individual Plaintiffs. In January 2011, attorneys for DRTx filed suit on behalf of the Individual Plaintiffs through their next friend Geoffrey Courtney.

In their amended petition, the Plaintiffs allege that the continued confinement of the Individual Plaintiffs in SSLCs without periodic judicial review violates the Individual Plaintiffs' right to procedural due course of law under the Texas Constitution, s*ee* Tex. Const. art. I, § 19, and that the State Defendants' failure to provide the Individual Plaintiffs with a community referral—despite the determination of their respective IDTs that their needs could be met in a less restrictive environment—violates the Individual Plaintiffs' right to substantive due course of law

6

under the Texas Constitution, *see id*., and their rights under the PMRA—including the right to reside in the least restrictive setting appropriate to their needs.[6] *See* Tex. Health & Safety Code § 592.013.

Plaintiffs seek declarations that the indefinite involuntary commitment of the Individual Plaintiffs without judicial review of their commitment orders violates the Texas Constitution's guarantee of procedural due course of law, and that the State Defendants' failure to provide community referrals for the Individual Plaintiffs violates both the PMRA and substantive due process guarantees under the Texas Constitution. In addition to declaratory relief, Plaintiffs additionally seek injunctive relief to prohibit the State Defendants from continuing the involuntary commitment of all SSLC residents without periodic judicial review, and to require the State Defendants to ensure that all residents of SSLCs who have been determined to be appropriate for community placement are discharged through a community referral. Plaintiffs additionally seek attorney's fees under the UDJA.

In their plea to the jurisdiction, the State Defendants asserted the Plaintiffs lack standing because: (1) their claims are not redressable by any permissible relief against the State Defendants; (2) Courtney lacks authority to act as next friend for the Individual Plaintiffs; and (3) DRTx has neither organizational nor associational standing. The State Defendants additionally argued that the Consent Decree takes precedence over any remedy the Plaintiffs could obtain from the trial court, and the trial court had no jurisdiction over the Plaintiffs' claims for violations of the

---

[6] The Individual Plaintiffs also seek to maintain the suit as a class, an issue not yet reached by the trial court.

7

PMRA under the UDJA. The State Defendants additionally filed a verified motion to show authority also challenging Courtney's authority to represent the Individual Plaintiffs.

In response to the State Defendants' plea to the jurisdiction, the United States filed a statement of interest with the trial court stating that the U.S. has an interest in this litigation because it implicates the interpretation of the prior Consent Decree between the U.S. and Texas. In its statement, the U.S. states its position that the imposition of periodic judicial review of involuntary commitment orders would supplement—rather than conflict—with the terms of the Consent Decree:

> To the extent that Plaintiffs seek the imposition of periodic judicial review in addition to the annual internal review process set out in the Consent Decree, Plaintiffs' claims and prayers for relief do not conflict with the terms of the Consent Decree. On its face, Plaintiffs' complaint does not seek to disrupt the Consent Decree's annual internal review process, but rather, to supplement that process with an additional mechanism for discharge of individuals to the most integrated setting appropriate to their needs. In this regard, the Consent Decree expressly contemplates and reconciles the existence of parallel mechanisms for discharging individuals to the community, including court-ordered discharge.

In its statement, the U.S. took no position on the merits of the Plaintiffs' claims.

Following the hearing on the plea to the jurisdiction, at which the State Defendants asserted that the relief sought would conflict with the Consent Decree, the U.S. filed a supplemental statement of interest reiterating its position that the periodic judicial review of commitment orders would not conflict with the Consent Decree. The supplemental statement, however, additionally addressed the injunctive relief sought by the Plaintiffs and stated that the U.S. would insist that any discharge of residents occur in compliance with the terms of the Consent Decree, requiring that all discharges occur safely and that the residents' needs must be met in their community placement:

8

The Consent Decree between the United States and the State requires all discharges occur safely and that individuals' needs are met in their new setting. To the extent that relief in this case results in the discharge of individuals from SSLCs, the United States will continue to insist that the Consent Decree be fully implemented.

The U.S. again took no position on the merits of the Plaintiffs' suit.

After hearing the plea to the jurisdiction and the motion to show authority concurrently, the trial court denied both motions.[7]

## DISCUSSION

On appeal, the State Defendants raise numerous issues challenging the Plaintiffs' standing, contending: (1) Courtney does not have authority to represent the Individual Plaintiffs as next friend and DRTx lacks associational or organizational standing; and (2) the Individual Plaintiffs lack standing to pursue their procedural and substantive due course of law claims because a favorable decision would not redress their alleged injuries. In addition, the State Defendants challenge the Individual Plaintiffs' claims for violations of the PMRA, contending that the trial court has no jurisdiction over these claims under the UDJA because: (1) the civil penalties prescribed by the PMRA are the Individual Plaintiffs' exclusive remedy for violations of their rights under the statute; and (2) if declaratory relief is allowed, the APA provides the exclusive remedy for invaliding state agency policies and procedures.

---

[7] The only additional evidence presented at the hearing was a reference guide published by DADS.

9

**Standard of Review**

We review a trial court's decision on a rule 12 motion for an abuse of discretion where, as here, there is a best-interest consideration at play in the case. *See Urbish v. 127th Judicial Dist. Court*, 708 S.W.2d 429, 432 (Tex. 1986); *cf. Metz v. Lake LBJ Mun. Util. Dist.*, No. 03-01-00312-CV, 2002 WL 31476887 at *4 (Tex. App.—Austin Nov. 7, 2002, no pet.) (district court's finding that attorney lacked authority to file or maintain suit, where there was no best-interest consideration, was conclusion of law reviewed de novo). A trial court abuses its discretion if it acts without reference to any guiding rules and principles or clearly fails to analyze or apply the law correctly. *City of Dallas v. Vanesko*, 189 S.W.3d 769, 771 (Tex. 2006) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

A plea to the jurisdiction is among the procedural mechanisms through which a party may challenge a trial court's authority to decide the subject matter of a specific cause of action. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Texas Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 737 (Tex. App.—Austin 2014, pet. dism'd). A plea questioning the trial court's subject-matter jurisdiction raises a question of law that we review de novo. *See Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007).

The State Defendants' plea to the jurisdiction challenges the Plaintiffs' pleadings and not the existence of jurisdictional facts. *See id.* Accordingly, we must determine if the Plaintiffs have alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *See id.*; *Miranda*, 133 S.W.3d at 226. To determine whether this authority exists, we look to the contents of the claimant's live pleadings. *Miranda*, 133 S.W.3d at 226. The claimant has the initial burden

of alleging facts that would affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id*. Mere unsupported legal conclusions do not suffice. *See Balquinta*, 429 S.W.3d at 737–38. We construe the pleadings liberally in favor of jurisdiction, taking them as true in the first instance, and look to the pleader's intent. *Westbrook*, 231 S.W.3d at 405; *Miranda*, 133 S.W.3d at 226. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the Plaintiffs should be afforded the opportunity to amend. *See Miranda*, 133 S.W.3d at 226. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the Plaintiffs an opportunity to amend. *See id*.

The State Defendants' issues on appeal also raise questions of statutory construction. Statutory construction is a question of law that we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in construing statutes is to give effect to the legislature's intent, which we seek first and foremost in the statutory text. *Id*.; *Combs v. Chapal Zenray, Inc.*, 357 S.W.3d 751, 755–56 (Tex. App.—Austin 2011, pet. denied). If the statute is clear and unambiguous, we must apply its words according to their common meaning without resort to rules of construction or extrinsic aids. *Shumake*, 199 S.W.3d at 284.

**Next Friend's Authority to Represent Individual Plaintiffs**

As a preliminary matter, we begin with the State Defendants' third issue on appeal: whether Courtney has authority to prosecute this suit as next friend for the Individual Plaintiffs, who are all adults and have no familial relationship with Courtney. The suit was initially filed by DRTx on behalf of the Individual Plaintiffs through Courtney as their next friend pursuant to Texas Rule

11

of Civil Procedure 44, which allows persons non compos mentis who have no legal guardian to sue and be represented by a next friend. Tex. R. Civ. P. 44; *see also Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) (incompetents lack capacity to sue due to their legal disability and may appear in court only through legal guardian, next friend, or guardian ad litem).

The State Defendants concede that the Individual Plaintiffs lack the capacity to proceed in this lawsuit without a guardian or next friend representing their interests. In their verified motion to show authority, the State Defendants argued only that under this Court's prior opinion, *Saldarriaga v. Saldarriaga*, Courtney was not authorized to represent the Individual Plaintiffs because he had not been appointed next friend by a process equivalent to a guardianship proceeding under the Probate Code, and that he was not qualified to serve as next friend because of a conflict of interest. *See* 121 S.W.3d 493, 498–99 (Tex. App.—Austin 2003, no pet.).

At the hearing on the motion to show authority, Courtney testified that he was a lawyer experienced with disability rights law, that he had completed courses with the State Bar of Texas authorizing him to serve as an attorney ad litem, and that he had served in that capacity in many suits. With regard to the present suit, he testified that he had been approached by DRTx to evaluate the appropriateness of community placement for the Individual Plaintiffs. After meeting the Individual Plaintiffs and reviewing their records, Courtney testified that he determined they were appropriate candidates for community placement and proceeded with filing this suit on their behalf as next friend without complying with the procedural requirements for appointment of guardians

12

under the Probate Code. *See* Tex. Estates Code § 1101.101.[8] At the hearing, the State Defendants conceded that the Individual Plaintiffs lacked the capacity to protect their own legal interests but contested Courtney's authority to represent them as next friend. The trial court found that Courtney did not have an interest in the suit conflicting with the interests of the Individual Plaintiffs and permitted Courtney to proceed as next friend.

Texas Rule of Civil Procedure 44 provides that persons non compos mentis who have no legal guardian[9] may be represented by a next friend, but as we have recognized this "rule does not provide for any kind of procedure for the *appointment* of a next friend." *Saldarriaga*, 121 S.W.3d at 498 (emphasis in original); *see also Gallegos v. Clegg*, 417 S.W.2d 347, 352 (Tex. Civ. App.—Corpus Christi 1967, writ ref'd n.r.e.) (noting rules of procedure do not prescribe qualifications of person acting as next friend). It merely gives minors and incapacitated persons the ability to sue and appear by a representative. *Saldarriaga*, 121 S.W.3d at 498. Further, Rule 44 does not require that the next friend have a familial or other relationship with the person they seek to represent, and any competent adult acting in good faith may appear as next friend. *See* Tex. R. Civ.

---

[8] Effective January 1, 2014, the Texas Probate Code was repealed and recodified in the Texas Estates Code. *See* Act of May 26, 2009, 81st Leg., R.S., ch. 680, 2009 Tex. Gen. Laws 1512, 1512–1732. The new codification is without substantive change and its purpose is to make the law "more accessible and understandable." *See* Tex. Estates Code § 21.001.

[9] According to the Plaintiffs' pleadings, none of the Individual Plaintiffs had a guardian or legally authorized representative when this suit was filed. During oral argument, DRTx informed the court that a guardian has been appointed for G.G.E. during the course of this litigation. In suits and claims by and against a ward, the legal guardian must act for the ward. *See Quada v. Quada*, 396 S.W.2d 232, 234 (Tex. Civ. App.—Texarkana 1965, no writ); *McGinnis v. McGinnis*, 267 S.W.2d 432, 435–36 (Tex. Civ. App.—San Antonio 1954, no writ); *Wesner v. Woodson*, 111 S.W.2d 354, 356 (Tex. Civ. App.—Beaumont 1937, writ ref'd); *see also* Tex. R. Civ. P. 44. If a guardian has been appointed for G.G.E., the guardian must forthwith represent G.G.E.'s interests in this suit.

P. 44; *Gordy v. Alexander*, 550 S.W.2d 146, 150 (Tex. Civ. App.—Amarillo 1977, writ ref'd n.r.e.); *Gallegos*, 417 S.W.2d at 352. Therefore, we are presented with the question of what procedure, if any, was Courtney required to follow before proceeding as next friend for the Individual Plaintiffs.

In *Saldarriaga*, we were presented with the same question and found that, where fact issues exist as to the competence or consent of an adult alleged to be non compos mentis, the appointment of a next friend—for due process purposes—should parallel procedures established in the probate court for appointment of guardians. 121 S.W.3d at 499; *see also Lindly v. Lindly*, 113 S.W. 750, 752–53 (Tex. 1908) (when fact issues exists as to person's incompetency or consent to next friend's representation, personal liberties involved necessitate further inquiry by trial court into person's mental capacity before proceeding). Compliance with the procedural safeguards afforded by the Estates Code is necessary when capacity or consent are contested because, if in fact a person is competent, he is entitled to appear in person or through a representative of his choice. *See Saldarriaga*, 121 S.W.3d at 500 ("The probate code contains uniform, strict procedural safeguards to protect a person's liberty and property interests before a court may take the drastic action of removing her ability to make her own legal decisions."); *see also Lindly*, 113 S.W. at 752 (appointment of next friend infringes on personal liberties that party cannot be deprived of "unless it be made to appear that by age, disease, or other cause" party is incapable of taking care of his interests).

In *Saldarriaga*, consent and capacity were at issue when the trial court appointed a next friend to represent a wife during a divorce proceeding without a formal adjudication of her incompetence and approved a settlement agreement executed by the next friend over the wife's

14

objections. 121 S.W.3d at 494–95; *see also Home Benefit Ass'n v. Robbins*, 34 S.W.2d 329, 330 (Tex. Civ. App.—Waco 1930, no writ) (whether next friend may act presents questions of party's competence and consent to action). We concluded that, under those circumstances, the trial court abused its discretion by not referring the motion to the probate court to consider in a timely manner the need for a guardianship. *Saldarriaga*, 121 S.W.3d at 500.

Here, unlike *Saldarriaga*, it is undisputed that the Individual Plaintiffs lack the capacity to properly care for their own interests in this litigation. The Individual Plaintiffs have severe intellectual disabilities and have been involuntarily committed to SSLCs for many years. Although an order of commitment is not an adjudication of mental incompetence, all that is necessary to be represented by a next friend is that the party merely be incapable, by reason of mental or bodily infirmity, of properly caring for his or her own interests in the litigation. Tex. Health & Safety Code § 593.054 (commitment order not adjudication of mental incompetence); *Lindly*, 113 S.W. at 752 (standard for appointment of next friend).

Further, the trial court heard evidence on Courtney's qualifications and found he was qualified to adequately represent the interests of the Individual Plaintiffs. Absent evidence to the contrary, "it is presumed that the action is brought with the permission and such consent" as the Individual Plaintiffs are "capable of giving and that it is in fact [their] suit." *See Kaplan v. Kaplan*, 373 S.W.2d 271, 274 (Tex. Civ. App.—Houston 1963, no writ); *see also Lindly*, 113 S.W. at 752 (in petitions by next friend, "it is to be presumed, in the absence of anything appearing to the contrary, that whatever consent to the bringing of the suit such person is capable of giving has been obtained and that it is in fact his suit"); *Home Benefit Ass'n*, 34 S.W.2d at 330 (absent contrary

15

evidence, it is presumed that person non compos mentis has consented to next friend acting for him in prosecution of suit).

On this record, we cannot conclude the trial court abused its discretion by overruling the motion to show authority and permitting Courtney to proceed as next friend. *See Urbish*, 708 S.W.2d at 431. We overrule the State Defendants' third issue on appeal.[10]

**Individual Plaintiffs' Due Course of Law Claims**

Having found the next friend is authorized to proceed in this suit on behalf of the Individual Plaintiffs, we next consider the State Defendants' first issue and the crux of their appeal: whether the Individual Plaintiffs lack standing to prosecute their due course of law claims because they have not alleged a redressable injury. In this context, "standing" refers to a Texas Constitution-imposed threshold requirement regarding the stake a plaintiff must possess in a dispute before a court can exercise subject-matter jurisdiction. *Balquinta*, 429 S.W.3d at 739. Standing under the Texas Constitution requires "a concrete injury to a plaintiff and a real controversy between the parties that will be resolved by the court." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012). The Texas Supreme Court has equated this requirement with the federal test for Article

---

[10] In its second issue, the State Defendants contend DRTx does not have organizational or associational standing to bring this suit. As DRTx asserts the same claims and seeks the same relief as the Individual Plaintiffs, we need not address and express no opinion as to DRTx's standing. *See Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981) ("There are three groups of plaintiffs in this litigation . . . . Because we find [that one of the groups] has standing, we do not consider the standing of the other plaintiffs."); *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 519 (Tex. 1995) ("Because the other plaintiffs . . . bring the same facial challenges and seek the same declaratory relief . . . we need not address their individual standing and we express no opinion thereon.").

III standing: "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014)). Given the parallels between that test and our own, we turn for guidance to the United States Supreme Court's following explication and refinement of that test:

(1)     the plaintiff must have personally suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical";

(2)     "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court"; and

(3)     "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations, internal quotation marks, and brackets omitted); *see Heckman*, 369 S.W.3d at 154; *Balquinta*, 429 S.W.3d at 739.

In their pleadings, the Individual Plaintiffs assert both procedural and substantive due course of law claims under the Texas Constitution. For both claims, the State Defendants contend the Individual Plaintiffs have failed to meet the third requirement of standing: redressability. Redressability is an essential element of standing and requires the Individual Plaintiffs to prove that it is "likely, as opposed to merely speculative," that their alleged injury "will be redressed by a favorable decision." *See Lujan*, 504 U.S. at 560. The redressability prong deprives courts of

17

jurisdiction over cases in which the likelihood of the requested relief redressing the plaintiff's injury is only speculative. *See id*. at 568–70 (holding, in part, that plaintiffs lacked standing when their injury could only be redressed by terminating funding for foreign projects, and funding agencies were not parties to suit, and any relief trial court could have provided against existing defendants was not likely to produce relief needed); *Good Shepherd Med. Ctr., Inc. v. State*, 306 S.W.3d 825, 836–37 (Tex. App.—Austin 2010, no pet.) (holding, in part, that hospital failed to establish standing when it was merely speculative that the remedy it sought for its alleged loss of sole-provider status for TRS health plan—invalidation of statutory amendment requiring TRS to include competitor hospital in network—would induce TRS to remove competitor hospital from network when, notwithstanding amendment, TRS had discretion in choosing providers). The Individual Plaintiffs, however, are not required to demonstrate with absolute certainty that the relief requested in their complaint will eliminate the harms they will allegedly suffer. *See Public Empls. for Envtl. Responsibility v. U.S. Dep't of the Interior*, 832 F.Supp.2d 5, 19 (D.D.C. 2011).

**Individual Plaintiffs' Procedural Due Course of Law Claims**

We begin by addressing the redressability of the Individual Plaintiffs' procedural due course of law claims. Though textually different, Texas courts generally construe the due course of law provision in the same manner as its federal counterpart, the Due Process Clause. *See Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 658 (Tex. 2004). Procedural due process mandates that any government action depriving a person of life, liberty, or property be implemented in a fair manner. *See Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

18

Liberally construing the Plaintiffs' live pleadings, their central contention is that the State Defendants' continued confinement of the Individual Plaintiffs is unconstitutional because the PMRA—the statute providing the State Defendants with the authority to confine the Individual Plaintiffs indefinitely without periodic judicial review of their commitment orders—unconstitutionally deprives them of their liberty without due course of law protections afforded by the Texas Constitution. *See* Tex. Const. art. I, § 19; *see also* Tex. Health & Safety Code § 593.052 (providing no time limit on court's order for involuntary confinement under PRMA). To redress the procedural due course of law violations alleged, the Plaintiffs seek declaratory relief and related claims for injunctive relief.

To challenge a statute as unconstitutional, a plaintiff "must suffer some actual or threatened injury under the statute" and "must contend that the statute unconstitutionally restricts the plaintiff's own rights." *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 626 (Tex. 1996). As it is undisputed that the Individual Plaintiffs have suffered an injury from the loss of their liberty under the PMRA, the State Defendants contest only the redressability of that injury. *See Lujan*, 504 U.S. at 560–61.

With regard to the declaratory relief sought, the State Defendants contend that the requested declaratory relief would not redress the Individual Plaintiffs' injury because the declarations would amount to "no more than an advisory opinion" that "would leave [the Individual Plaintiffs] institutionalized without periodic judicial review of their commitments." The separation of powers article of the Texas Constitution prohibits courts from issuing advisory opinions. Tex. Const. art. II, § 1; *see Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) (advisory opinion decides

19

"abstract questions of law without binding the parties"). As such, a party seeking declaratory relief must show that a requested declaration is not merely an advisory opinion but will resolve a live controversy between the parties. *See Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex. App.—Austin 2002, pet. denied).

It is, however, "well recognized that declaratory relief is the proper remedy when challenging the constitutionality of a statute." *Rylander v. Caldwell*, 23 S.W.3d 132, 136 (Tex. App.—Austin 2000, no pet.); *see also Humana Ins. Co. v. Texas Health Ins. Risk Pool*, 257 S.W.3d 402, 409 (Tex. App.—Corpus Christi 2008, no pet.) ("Declaratory relief is the proper remedy when challenging the constitutionality of a statute."). Here, unlike an advisory opinion, the Individual Plaintiffs' requested declarations do not concern hypothetical claims or abstract questions of law. *See Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 440 (Tex. App.—Austin 2004, pet. denied). Rather, the requested declarations go to the heart of the controversy between the parties: whether it is unconstitutional to indeterminately commit adults with intellectual disabilities.[11]

---

[11] The State Defendants suggest that the requested declaratory relief would not redress the Individual Plaintiffs' injuries because it is merely speculative that the Legislature would change the law upon a declaration of the statute's unconstitutionality. We decline to presume that the Legislature would ignore a ruling from the court that a statutory scheme infringes upon constitutionally protected rights. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) (we presume Legislature is aware of background law and acts with reference to it); *see also Juliff Gardens, L.L.C. v. Texas Comm'n on Envtl. Quality*, 131 S.W.3d 271, 278 (Tex. App.—Austin 2004, no pet.) ("[T]he determination of the constitutionality of a statute is unquestionably an issue fit for judicial review."). Regardless, it does not follow that the Individual Plaintiffs' injuries in this case cannot be redressed by a favorable declaratory judgment. *See Steffel v. Thompson*, 415 U.S. 452, 469-70 (1974) ("[A] favorable declaratory judgment may nevertheless be valuable to the plaintiff though it cannot make even an unconstitutional statute disappear."); *see also* Tex. Civ. Prac. & Rem. Code § 37.003 (court has authority to declare rights and status whether or not further

20

Further, while we recognize the State Defendants' contention that they themselves do not have the authority to provide SSLC residents with judicial review, it is the province of the judiciary to determine what process is due to sufficiently protect a Constitutional interest. *See*, *e.g.*, *In re Harhut*, 385 N.W.2d 305, 312–13 (Minn. 1986) (Minnesota Supreme Court announcing due process procedural safeguards that must be followed in all cases concerning indeterminate commitment of intellectually disabled adults, including judicial review of patient's status at least once every three years); *see generally Goldberg v. Kelly*, 397 U.S. 254, 263 (1970) (holding procedural due process requires that pretermination evidentiary hearing be held before assistance payments to welfare recipient are discontinued and outlining procedures that must be followed at hearing); *Harrell v. State*, 286 S.W.3d 315, 319–321 (Tex. 2009) (announcing procedure that must be followed by State to withdraw money from inmate trust account, after determining that inmate had constitutionally protected property interest in account); *Izen v. Commission for Lawyer Discipline*, 322 S.W.3d 308, 320 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("the remedy for denial of due process is due process); *Lee v. Texas Workers' Comp. Comm'n*, 272 S.W.3d 806, 817 (Tex. App.—Austin 2008, no pet.) ("If a constitutionally protected . . . interest is at stake, we must then determine what process is due to sufficiently protect that interest.").

---

relief is or could be claimed and such judgment has force and effect of final judgment). Nevertheless, where a statute is found to deprive liberty interests, the implication is the courts may overturn those applications of the statute declared unconstitutional. *See Steffel*, 415 U.S. at 469–70 ("If a declaration of total unconstitutionality is affirmed by this Court, it follows that this Court stands ready to reverse any conviction under the statute. If a declaration of partial unconstitutionality is affirmed by this Court, the implication is that this Court will overturn particular applications of the statute.").

21

In addition, we note that the Consent Decree does not negate the redressability of the Plaintiffs' requested declaratory relief. As the U.S. notes in its statement of interest:

> On its face, Plaintiffs' complaint does not seek to disrupt the Consent Decree . . . but rather, to supplement that process with an additional mechanism for discharge of individuals to the most integrated setting appropriate to their needs. In this regard, the Consent Decree expressly contemplates and reconciles the existence of parallel mechanisms for discharging individuals to the community, including court-ordered discharge.

As such, whatever the merits of their claims might ultimately prove to be, we conclude the Individual Plaintiffs have plainly demonstrated the minimum threshold interest that confers standing under the Texas Constitution. Regardless of whether the trial court additionally grants the requested injunctive relief, we conclude the declaratory relief sought is sufficient to satisfy the redressability requirements of standings. *Larson v. Valente*, 456 U.S. 228, 244 (1982) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury."); *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994) (request for injunction to enforce declaratory judgment is "unnecessary" where there is no indication that state agency will attempt to contravene the trial court's judgment).

**Individual Plaintiffs' Substantive Due Course of Law Claims**

Besides their constitutional challenge to the PMRA, the Individual Plaintiffs[12] additionally allege that the State Defendants' failure to provide them with referrals for community

---

[12] The Individual Plaintiffs alone assert substantive due course of law claims.

22

placement and failure to train their staff adequately on the appropriate procedures regarding the referral of patients who no longer meet commitment criteria violates their right to substantive due course of law under the Texas Constitution. As a remedy, the Individual Plaintiffs seek declaratory relief and related claims for injunctive relief.

Like the federal due process clause, the due course of law provision of the Texas Constitution contains a substantive as well as a procedural component. *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 525 (Tex. 1995). "Texas's due course of law clause and the federal due process clause are textually different, but we generally construe the due course clause in the same way as its federal counterpart." *Texas Workers' Comp. Comm'n*, 136 S.W.3d at 658. A substantive due process violation occurs when the government deprives individuals of constitutionally protected rights by an arbitrary use of its power. *Byers v. Patterson*, 219 S.W.3d 514, 525 (Tex. App.—Tyler 2007, no pet.) (citing *Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2000)). The U.S. Supreme Court has recognized that the liberty interests of involuntarily committed persons extend beyond the initial deprivation of liberty to retention of liberty interests in safety, freedom from bodily restraint, and minimally adequate training to ensure safety and freedom from undue restraint. *Youngberg v. Romeo*, 457 U.S. 307, 316–19 (1982). However, such interests are not "absolute"; rather, the liberty interest of the individual must be balanced against the legitimate interests of the State, including fiscal and administrative burdens. *Id*. at 319–20. In balancing the rights of the involuntarily committed and the State's legitimate interest, "the Constitution only requires that the courts make certain that professional judgment in

23

fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Id*. at 321.[13]

On appeal, the State Defendants argue—as they argued with the procedural due course of law claims—that the Individual Plaintiffs' substantive due course of law claims are not redressable by the trial court. With regard to the substantive due course of law claim, however, the State Defendants argue the claim is not redressable because it "duplicates a claim already brought and resolved against the same defendants by the U.S. Department of Justice," and the Consent Decree resulting from that suit "foreclose[s] an independent remedy by a Travis County district court for essentially the same alleged deprivation."

The State Defendants' contentions, though, are in direct contradiction to the U.S. statement of interest stating that the Plaintiffs' pleadings on their face do not seek to disrupt the Consent Decree. Moreover, the State Defendants acknowledge the Individual Plaintiffs' claims are not barred by res judicata, nor have they cited any federal preemptive principles that would bar the Individual Plaintiffs from seeking relief for violations of rights guaranteed by the Texas Constitution. Accordingly, we cannot conclude the State Defendants have shown the Consent Decree deprives the trial court of jurisdiction over the Individual Plaintiffs' substantive due course of law claims.

---

[13] There is no consensus among federal courts as to the scope of the *Youngberg* protections as applied to a committed individual's right to habilitative care and treatment outside of the institution. *See Evans v. Fenty*, 701 F.Supp.2d 126, 152–56 (D.D.C. 2010) (explaining history of *Youngberg* and divergent federal interpretations as to scope of protection). As the State Defendants did not address this issue in their plea to the jurisdiction, we need not address and express no opinion as to this issue.

Having concluded the Individual Plaintiffs have standing to bring both their procedural and substantive due course of law claims, we overrule the State Defendants' first issue on appeal.

**Declaratory Relief for Alleged PMRA Violations**

In addition to their constitutional due process claims, the Individual Plaintiffs seek a declaration and related injunctive relief under the UDJA that the State Defendants' failure to discharge them through community referrals—despite the determinations of their respective IDTs that their needs could be met in less restrictive environments—violates various rights guaranteed to persons with intellectual disabilities under the PMRA, including the requirement to provide services in the least restrictive environment. *See* Tex. Civ. Prac. & Rem. Code §§ 37.004 (person whose rights or status are affected by statute may have determined any question of construction arising under the statute and obtain a declaration of rights thereunder); .011(further relief based on a declaratory judgment or decree may be granted whenever necessary or proper); *see also* Tex. Health & Safety Code § 592.013 (person with mental retardation has right to live in least restrictive setting appropriate to person's individual needs); *Carter v. State*, 611 S.W.2d 165, 166 (Tex. Civ. App.—Austin 1981, writ ref'd n.r.e.) (PMRA "unquestionably" gives mentally retarded persons "general statutory right to a least restrictive environment commensurate with their needs and abilities.").

The PMRA expressly authorizes a person with mental retardation to sue in district court, through a next friend, "any person" who "intentionally" or "recklessly violates [their] rights guaranteed by [the Act]." Tex. Health & Safety Code § 591.022(a), (b), (d). With regard to

25

remedies, the PMRA specifies that a person who violates the rights guaranteed by the PMRA is liable to the person injured for civil penalties ranging from $100 to $5,000. *Id*. § 591.022 (a), (b). In addition, the Act provides that the civil penalties provided under the statute do "not supersede or abrogate other remedies existing in law." *Id*. § 591.022 (f).

In addition to these private remedies, the PMRA specifies that the attorney general may sue for additional civil penalties and injunctive relief to: (1) restrain and prevent a person from violating the Act or a rule adopted by the department under this subtitle; or (2) enforce compliance with the Act or a rule adopted under the Act. *Id*. § 591.023. The PMRA again specifies that these remedies "do not supersede or abrogate other remedies existing at law." *Id*.

Because the PMRA creates privileges and rights not existing at common law and prescribes a remedy to enforce those rights, the State Defendants contend that these are the exclusive remedies for a violation of the PMRA and that the Individual Plaintiffs are barred from seeking relief under the UDJA, a remedy not prescribed by the PMRA for individuals injured by a violation of the statute. *See Texas Dep't of Pub. Safety v. Dierschke*, 952 S.W.2d 634, 636 (Tex. App.—Austin 1997, no pet.) ("Where the cause of action and remedy for its enforcement are derived from statute, the statutory provisions must be complied with in all respects."). The Plaintiffs, however, counter that they may, as an alternative to the remedies prescribed under the PMRA, seek relief under the UDJA because the PMRA expressly provides that its remedies provisions do "not supercede or abrogate other remedies existing in law." Tex. Health & Safety Code §§ 591.022(f), .023(g).

Whether a statute provides a specific right of enforcement is a question of statutory construction, hence subject to review as a matter of law. *Witkowski v. Brian, Fooshee & Yonge*

26

*Props.*, 181 S.W.3d 824, 830 (Tex. App.—Austin 2005, no pet.). We apply a rule of strict construction to statutory enforcement schemes and imply causes of action only when the drafters' intent is clearly expressed from the language as written. *Brown v. De La Cruz*, 156 S.W.3d 560, 567 (Tex. 2004). A right of enforcement should not be implied simply because the statute "fails to adequately protect intended beneficiaries." *Id.* Construing the plain language of the PMRA, the Act unquestionably provides persons with intellectual disabilities a private cause of action to enforce their rights under the statute though civil penalties. *See* Tex. Health & Safety Code § 591.022.

At issue, however, is whether the civil penalties prescribed by the statute were intended to be the exclusive remedy for private enforcement of rights. The general rule is that when a cause of action and the remedy for its enforcement are derived not from the common law but from statute, as in this case, the statutory remedy is exclusive. *See In reAment*, 890 S.W.2d 39, 41 (Tex. 1994). This rule, however, can have no application where the Legislature expressly provides that a statute's remedies are non-exclusive. *See*, *e.g.*, *Kish v. Van Note,* 692 S.W.2d 463, 467 (Tex. 1985) (concluding remedies under DTPA are cumulative rather than mutually exclusive of other remedies where act provided that its remedies provision "are in addition to any other procedures or remedies provided for in any other law."); *Texas State Hwy. Dep't v. Edens*, 174 S.W.2d 54, 56 (Tex. Civ. App.—Waco 1943, writ dism'd) ("Where a cause of action and the remedy for its enforcement are derived not from the common law but from statute, . . . the general rule is that the statutory provisions . . . are mandatory and exclusive, unless the contrary clearly appears."); *see also City of Lorena v. BMTP Holdings*, *L.P.*, 409 S.W.3d 634, 641 (Tex. 2013) ("Our goal in interpreting any

statute is to ascertain and give effect to the Legislature's intent as expressed by the language of the statute."); *Laidlaw Waste Sys. Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995) ("It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose.").

The PMRA expressly provides that its remedies provisions do "not supercede or abrogate other remedies existing in law." Tex. Health & Safety Code §§ 591.022(f), .023(g). Construing the plain language of the statute, we thus cannot conclude that the remedies provided under the PMRA are exclusive, as such an interpretation would be contrary to the express language of the statute. *See id*. §§ 591.022(f), .023(g); *cf.* Tex. Tax Code § 42.09 (statutory remedies provision titled "Remedies Exclusive" and stating remedies "authorized by this title are exclusive"); *see also Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012) ("The plain language of a statute is the surest guide to the Legislature's intent.").

Having concluded that a person injured by a violation of the PMRA may seek remedies in addition to those provided under the statute, we next consider whether the UDJA provided another remedy existing in law. The UDJA is a remedial enactment that generally permits a litigant in a justiciable controversy whose rights are affected by a statute, the right to obtain a declaration of their rights, status, or other legal relations thereunder. Tex. Civ. Prac. & Rem. Code § 37.004(a); *see Texas Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384 (Tex. 2011). The purpose of a declaratory judgment is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." Tex. Civ. Prac. & Rem. Code § 37.002(b). "The [UDJA] does not confer jurisdiction

28

on a trial court, but rather makes declaratory judgment available as a remedy for a cause of action already within the court's jurisdiction." *Reynolds v. Reynolds*, 86 S.W.3d 272, 275–76 (Tex. App.—Austin 2002, no pet.); *see Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) ("[W]e have interpreted the Uniform Declaratory Judgments Act . . . to be merely a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power, permitting the rendition of advisory opinions."); *Frasier v. Yanes*, 9 S.W.3d 422, 427 (Tex. App.—Austin 1999, no pet.) ("A claimant seeking a declaratory action must already have a cause of action at common law or under some statutory or constitutional provision.").

Here, we have already determined that the PMRA confers a private cause of action for those individuals afforded protections by the Act. Thus, a declaratory judgment is a proper remedy for determining the Individual Plaintiffs' rights under the PMRA. *See* Tex. Civ. Prac. & Rem. Code § 37.004 (person whose rights or status are affected by a statute may have determined any question of construction arising under statute and obtain a declaration of rights thereunder); *Frasier*, 9 S.W.3d at 427 ("Because we have decided that section 52e confers a private cause of action, a declaratory judgment is a proper action for determining the officers' rights under this constitutional provision.").

Further, while we acknowledge that the UDJA cannot be invoked when it would interfere with some other exclusive remedy or some other entity's exclusive jurisdiction, *see MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009), we have already concluded that the Legislature did not intend for the statutory remedies under the PMRA to be

exclusive. *See* Tex. Health & Safety Code § 591.022(f)*; see also Edwards Aquifer Auth. v. Chemical Lime, Ltd.*, 291 S.W.3d 392, 405 (Tex. 2009) (where statute provided that its remedies "do not affect other legal or equitable remedies that may be available," court permitted relief under UDJA because there was no "argument why we should not take [Act] at its word"). Moreover, although the PMRA provides the Individual Plaintiffs with a remedy for monetary relief, the mere existence of another remedy does not deprive the court of jurisdiction to grant declaratory relief under the UDJA. *See* Tex. Civ. Prac. & Rem. Code § 37.003 (court has power to render declaratory judgment "whether or not further relief is or could be claimed"); *MBM Fin. Corp.*, 292 S.W.3d at 669.

Accordingly, we conclude the Individual Plaintiffs have alleged a justiciable controversy as to their rights and status under the PMRA and are entitled, in accordance with the remedies provisions thereunder, to seek a declaration of their rights under the UDJA. We overrule the State Defendants' fourth issue on appeal.[14]

**Exclusive Jurisdiction under the APA**

In their final issue on appeal, the State Defendants contend that, regardless of whether a party may seek relief under the UDJA for violations of rights guaranteed by the PMRA, the Individual Plaintiffs have failed to establish jurisdiction under the UDJA because the substance of their claims is an administrative rule challenge governed exclusively by the APA. It is true that when a party "files a proceeding that only challenges the validity of an administrative rule, the parties are

---

[14] The UDJA does not waive the State's sovereign immunity when a plaintiff seeks a declaration of his or her rights under a statute. *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011). Such claims must be brought against the appropriate state officials in their official capacity under the *ultra vires* exception. *Id*.

bound by the APA and may not seek relief under the UDJA because such relief would be redundant."

*See Texas State Bd. of Plumbing Exam'rs v. Associated Plumbing-Heating-Cooling Contractors of Tex., Inc.*, 31 S.W.3d 750, 753 (Tex. App.—Austin 2000, pet. dism'd by agr.); *see also Canyon Reg'l Water Auth. v. Guadalupe-Blanco River Auth.*, 286 S.W.3d 397, 407 (Tex. App.—Corpus Christi 2008, no pet.). The Plaintiffs, however, counter that their pleadings do not identify nor challenge any administrative rule. Therefore, they contend the APA does not have exclusive jurisdiction and their suit is properly maintained under the UDJA.

To better understand the State Defendants' argument, a review of the statutory framework of the PMRA is helpful. As previously discussed, the PMRA itself does not provide review procedures to assess the appropriateness of a resident's continued commitment, but DADS has developed internal review procedures to assess whether a resident should remain in an SSLC or move to an alternate living arrangement. *See* 40 Tex. Admin. Code §§ 2.274–.276. Under the internal review procedures, each resident is assigned an IDT that meets at least annually to assess whether the SSLC is the most appropriate living arrangement for the individual and to provide a recommendation as to whether the individual should remain in the SSLC or move to an alternative living arrangement. *Id*. §§ 2.274(g)(4), 2.275–.276. A determination by an IDT that a resident could live in a less restrictive environment does not guarantee a resident the right to move from a SSLC, however, as the resident's IDT must also provide a recommendation that the individual should move to an alternative living arrangement and the IDT and SSLC must then perform further procedures to complete the community referral process. *Id*. §§ 2.275–.278.

31

In their pleadings, the Plaintiffs allege that all three of the Individual Plaintiffs have been determined by their respective IDTs to be capable of living in an alternative living arrangement. However, according to the Plaintiffs' pleadings, none of the Individual Plaintiffs have been provided with a formal recommendation for community referral. Plaintiffs allege that two of the Individual Plaintiffs—E.M.B. and G.D.E.—have been denied a referral because of the preferences of non-guardian family members. According to the pleadings, Plaintiff E.M.B. was initially provided with a community referral, but the referral was later revoked after the superintendent of her SSLC sent a letter to her IDT requesting they discontinue placement efforts because of the objections of a family member who was not an appointed guardian or otherwise legally authorized to represent E.M.B. Similarly, Plaintiff G.D.E. has also allegedly been denied a referral because of the preferences of a non-guardian family member. The pleadings do not specify why the third Individual Plaintiff—G.G.E.—has been denied a recommendation for community referral.

Based on their failure to obtain community referrals, the Individual Plaintiffs seek a declaration that the State Defendants' policies and practices of failing to recommend a community referral for those individuals determined to be appropriate for community-based services is unconstitutional and violates the PMRA. Because the pleadings raise a challenge to the policies and practices of an agency, the State Defendants argue that the substance of their claims is an administrative rule challenge governed exclusively by the APA.[15]

---

[15] The State Defendants also argue the APA is the Plaintiffs' sole remedy for its procedural due course of law claims based on the lack of judicial review for involuntarily committed adults. We disagree. The State Defendants state in their brief that they have "no authority to provide, or compel courts to provide, post-commitment judicial review" and that "legislation is undisputably required." As such, Plaintiffs challenge the constitutionality of the statute governing involuntary

32

The APA allows a party to bring a declaratory-judgment action against an agency to challenge the validity or applicability of an agency rule if it is alleged that the rule or its threatened application interferes with or impairs a legal right or privilege of the plaintiff. *See* Tex. Gov't Code § 2001.038. The APA defines a "rule" as a "state agency statement of general applicability" that "implements, interprets, or prescribes law or policy" or "describes the procedure or practice requirements of a state agency" but "does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures." *Id.* § 2001.003(6).

The Individual Plaintiffs in their pleadings, however, do not challenge any particular rule promulgated by the agency. Moreover, the State has not identified any agency statement of general applicability that implements, interprets, or prescribes a policy of denying adult SSLC residents community referrals. *See Leeper*, 893 S.W.2d at 443 ("Not every statement by an administrative agency is a rule for which the APA prescribes procedures for adoption and for judicial review. . . .The APA applies only to statements of general applicability that implement, interpret or prescribe law or policy.").

Rather, the Individual Plaintiffs seek a declaration as to whether the State Defendants' failure to provide them with community referrals violated their individual rights under the PMRA. Construing the rights guaranteed under the PMRA is central to determining and declaring whether the State Defendants have violated the Individual Plaintiffs' rights and properly invokes the jurisdiction of the UDJA. *See* Tex. Civ. Prac. Rem. Code § 37.004 (person whose rights are

commitments—the PMRA—and not the validity or applicability of an agency rule.

33

affected by statute, may have determined any question of construction arising under statute and obtain declaration of rights thereunder); *see also Texas Mun. Power Agency v. Public Util. Comm'n*, 100 S.W.3d 510, 519–20 (Tex. App.—Austin 2003, pet. denied) ("The narrow appellate procedure provided by the APA to attack a particular Commission order . . . does not displace the district court's ability to determine the scope of an agency's authority through a properly brought UDJA action."). Accordingly, we cannot conclude the substance of the Individual Plaintiffs' complaint challenges only the validity of an administrative rule governed exclusively by the APA. We overrule the State Defendants' fifth issue on appeal.

## CONCLUSION

Having concluded that the Plaintiffs' petition invoked the jurisdiction of the trial court, we affirm the trial court's denial of the plea to the jurisdiction.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Henson, and Goodwin
    Justice Henson Not Participating

Affirmed

Filed: April 30, 2015

34