ACCEPTED
06-15-00075-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/28/2015 11:30:07 PM
DEBBIE AUTREY
CLERK

No. 06-15-00075-CV

_____

IN THE

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

12/29/2015 8:53:00 AM

DEBBIE AUTREY
Clerk

SIXTH COURT OF APPEALS

at TEXARKANA

_____

GARY DAVID BRAY, et al.,

v.

GREGORY L. FENVES

Appealed from the 53rd District Court of
Travis County, Texas

—————————————————————————————————

## APPELLANTS' REPLY BRIEF

—————————————————————————————————

/s/C.L. Ray
Texas Bar No. 00000034
604 Beardsley Lane, Suite 100
Austin, Texas 78746
Tel. (512) 328-9238
Fax (512) 857-0606
clray4523@hotmail.com

/s/Kirk David Lyons
Texas Bar No. 12743500
Southern Legal Resource Center
P.O. Box 1235
Tel. (828) 669-5189
Fax (828) 669-5191
kdl@slrc-csa.org

ATTORNEYS FOR PLAINTIFFS

December 28, 2015

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.....................................................3

SUMMARY OF THE ARGUMENT...........................…….....5

ARGUMENT…………………………………………………..8

    I.     The District Court Has a Presumption of Jurisdiction that Has Not Been Rebutted and Has Been Affirmatively Exercised, Affording the District Court Jurisdiction……………………………………………..8

    II.    Plaintiffs Have Jurisdiction, Because the Trial Court Failed to Adequately Consider that Plaintiffs Bray and Littlefield Have Individual Standing……………11

    III.    Plaintiffs Have Taxpayer Standing, Because Defendant Violated Federal and State Law in Removing the Monuments………………………………14

          A.    Defendant's Removal of the Monuments Violated the Terms of the Littlefield Bequest……………14

          B.    Defendant's Removal of the Davis and Wilson Monuments Violated the Veterans Memorial Preservation and Recognition Act (18 U.S.C. § 1369)……………………………………………17

          C.    Defendant's Removal of the Davis and Wilson Monuments Violated the Texas Government Code, Sections 2261.501 and 2261.5011………19

    IV.    Plaintiffs Have Jurisdiction, Because the Trial Court Failed Adequately to Consider that the Sons of Confederate Veterans Has Associational Standing…23

    V.    Federal Precedents Relative to the Purpose and Effect

of Monuments Can Be Construed to Provide that Defendant's Removal of the Monuments Was Unlawful and Affords Jurisdiction to the Trial Court..............25

PRAYERS.......................................................................35

CERTIFICATES...............................................................37

## INDEX OF AUTHORITIES

### CASES

*Abbott v. G.G.E.*, 463 S.W.3d 633
     (Tex. App.—Austin Apr. 30, 2015)............................12-13

*American Humanist Association v. Maryland-National Capitol Park and Planning Commission*,
     No. DKC-14-0550 (D. Md. Nov. 30, 2015)...................25, 26

*City of Dallas v. Wright*, 36 S.W.2d 973 (Tex. 1931)................10

*Dealers Electrical Supply Co. v. Scoggins Construction Co., Inc.*,
     292 S.W.3d 650 (Tex. 2009).......................................19

*Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000).........9

*Dutcher v. Owens*, 647 S.W.2d 948 (Tex. 1983).....................19

*La Sara Grain v. First Nat'l Bank of Mercedes*,
     673 S.W.2d 558 (Tex. 1984).......................................19

*Lemon v. Kurtzman*, 403 U.S. 602 (1971)............................25

*Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009).....27

*Powers v. First Nat'l Bank of Corsicana*,
     137 S.W.2d 839 (Tex. Civ. App. 1940)............................18

*Powers v. First Nat'l Bank of Corsicana,*
     161 S.W.2d 273 (Tex. 1942)……………………………………18

*Rodeheaver v. Alridge,*
     601 S.W.2d 51 (Tex. Civ. App.—Houston [1st Dist.] 1980,
     writ ref'd n.r.e.)……………………………………………20

*Salazar v. Buono,* 559 U.S. 700 (2010)………………………………...27

*Sweeney v. Jefferson.* 212 S.W.3d 556
     (Tex. App.—Austin 2006, no pet.)…………………..8, 9, 10, 11

*Texas Ass'n of Business v. Texas Air Control Board,*
     852 S.W.2d 440 (Tex. 1993)……………………………………23

*Texas State Bd. of Chiropractic Examiners v. Abbot,*
     391 S.W.3d 343 (Tex. App.—Austin 2013, no pet.)…………19

*Utah Highway Patrol Association v. American Atheists, Inc.,*
     132 S.Ct. 12 (2011)……………………………………………27

*Van Orden v. Perry,* 545 U.S. 677 (2005)…………………25, 27, 33

## STATUTES

Texas Government Code § 2166.501…………………7, 9, 10, 20, 35

Texas Government Code § 2166.5011………………..7, 9, 10, 21, 35

U.S. Code, 18 U.S.C. § 1369,*Veterans Memorial Preservation*
     *And Recognition Act*……………………………………7, 17, 35

U.S. Code, 38 U.S.C. § 1501(3),
     *Regarding Confederate Veterans*……………………………17

## RULES

Texas Rule of Appellate Procedure 38.3, *Reply Brief*………………5

Texas Rule of Appellate Procedure 38.6(c), *Time to File Briefs*....5

OTHER AUTHORITIES

4 William V. Dorsaneo III,
  *Texas Litigation Guide* § 4.05[2].............................19, 20

Texas House Concurrent Resolution 38, 77th Leg. (2001).........33

## SUMMARY OF THE ARGUMENT

Appellants/Plaintiffs timely submit this reply brief in conformity with Rules 38.3 and 38.6(c).  Tex. R. App. Pro.

All jurisdictional issues have already been decided by the Austin Third Court of Appeals in *Sweeney v. Jefferson*, 212 S.W.3d 556 (Tex. App.—Austin 2006, no pet.).  District courts are courts of general jurisdiction.  As courts of general jurisdiction, district courts enjoy a presumption of subject-matter jurisdiction unless a contrary showing is made.  The Texas Supreme Court, as the *Sweeney* court noted, has determined that once a court has obtained jurisdiction over a cause of action as incidental to its general jurisdiction, the court may exercise any power necessary to administer justice to preserve the subject matter of the litigation and make its judgment effective.  And this Court, like

the trial court, derives its jurisdiction from the exercise by the trial court of its jurisdiction—specifically, the denial of Plaintiffs' application for temporary injunction. Notwithstanding Plaintiffs' efforts to point out error, the trial court erred by sustaining the plea to the jurisdiction and went on to exercise jurisdiction by denying the preliminary injunction. Plaintiffs filed a motion to void the trial court's denial of the preliminary injunction, which was overruled by operation of law and which was again, an exercise of jurisdiction. The trial court had a fair opportunity to void its order denying the temporary injunction, and thereby affirming that it did not have subject-matter jurisdiction. At this juncture, the trial court has now exercised its jurisdiction in this matter and no language in the Monument Protection Act divests the Court of jurisdiction.

Plaintiffs submit that *Sweeney, supra,* is on all fours and dispositive of the instant matter. However, should this Court consider other points, Plaintiffs would begin by correcting a significant and material misstatement by Defendant regarding Plaintiff's position as to the legitimate placement of the Jefferson

Davis monument. In his brief, Defendant submits that all Plaintiffs agree that the University's removal of monuments to the Briscoe Center is a sufficiently prominent position: "It is a place where [the monument] needs to be. . . ." Defendant's Response Brief at 15, FN 8. Nothing could be further from the truth. Defendant misrepresents the record by selectively citing from it. The entire citation from the reporter's record quotes Plaintiffs' attorney Kirk Lyons as follows: "[The Briscoe Center] is a place where it needs to be, but from an artistic and structural point of view, you are dealing with fire to move those statues. They need to be restored right where they are and we will offer testimony as to exactly how and why that should be done. They don't need to go anywhere." (RR 2:26-27). Plaintiffs have never agreed that the Briscoe Center is a proper site for the South Mall monuments, and Defendant's material misrepresentation of the reporter's record cannot be considered inadvertent.

Next, with reference to the statutes involved, the University's removal of the monuments was not merely improper; the removal was illegal. Plaintiffs will show that the monument

removal was illegal under the Federal Veterans Memorial Recognition and Protection Act (18 U.S.C. § 1369); the Texas Monument Protection Act §§ 2166.501 and 2166.5011; and under an analysis that determines whether a memorial is a veterans' memorial and, therefore, warrants protection under Texas or federal law.

Since the University unlawfully removed the Davis and Wilson monuments and expended public funds in doing so, the trial court acquired jurisdiction in this matter under the taxpayer exception to standing. The trial court also acquired individual and associational standing.

## ARGUMENT

I. THE DISTRICT COURT HAS A PRESUMPTION OF JURISDICTION THAT HAS NOT BEEN ADEQUATELY REBUTTED AND HAS BEEN AFFIRMATIVELY EXERCISED AFFORDING THE DISTRICT COURT JURISDICTION.

The issues in this cause have already been decided in *Sweeney v. Jefferson*, 212 S.W.3d 556 (Tex. App.—Austin 2006, no pet.). This decision is dispositive of the instant matter, because the clear parallels of fact and law between the two cases

are nearly identical. Sweeney involved removal of memorial plaques from the Texas Supreme Court Building. In reversing the 53rd District Court, the Austin Third Court of Appeals found that the trial court erroneously denied subject-matter jurisdiction to the Texas Division, Sons of Confederate Veterans, Inc. who sought declaratory judgment and a temporary injunction against the Texas Building and Procurement Commission for violation of the Texas Government Code §§ 2166.501 and 2166.5011 by unlawfully removing memorial plaques from the Texas Supreme Court. *Id. at* 557-60. While the facts vary a bit, the issues before this Court are indistinguishable from those before the *Sweeney* court.

Texas districts courts are courts of general jurisdiction. *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000); *Sweeney*, 212 S.W.3d at 562. "As courts of general jurisdiction, Texas district courts enjoy a presumption of subject-matter jurisdiction unless a contrary showing is made." *Sweeney*, 212 S.W.3d at 562 (citing *Dubai*, 12 S.W.3d at 75).

As noted in Sweeney, sections 2166.501 and 2166.5011 of the Monument Protection Act are silent as to the district court's jurisdiction in this matter, i.e., whether the removal of the veterans' monuments was illegal or not or whether a remedy is available for violation of the statute. *Sweeney*, 212 S.W.3d at 564.

> A court, once having obtained jurisdiction of a cause of action as incidental to its general jurisdiction, may exercise any power, or grant any writ, including the writ of injunction, necessary to administer justice between the parties to preserve the subject matter of the litigation, and make its judgment effective.

*Sweeney*, 212 S.W.3d at 564.

Since sections 2166.501 and 2166.5011 do not divest the district court of jurisdiction, Defendant does not challenge the truth of Plaintiffs' jurisdictional arguments under 2166.501 and 2166.5011, but instead relies solely on his contention that the sections are inapplicable. No other rebuttals to the presumption of jurisdiction are in the record, and accordingly, the district court has acquired jurisdiction to decide this matter.

The Texas Supreme Court has determined that once a court has obtained jurisdiction of a cause of action as incidental to its

general jurisdiction, the court may exercise any power necessary to administer justice to preserve the subject matter of the litigation and make its judgment effective. *City of Dallas v. Wright*, 36 S.W.2d 973, 975 (Tex. 1931); *Sweeney*, 212 S.W.3d at 564. It is undisputed that the trial court did in fact exercise its power of jurisdiction by denying Plaintiffs' application for temporary injunction. (CR 280). As set out in the introduction above, Plaintiffs apprised the trial court of its error. The trial court, however, denied Plaintiffs' motion to void the trial court's order on the preliminary injunction by function of law, (CR 280), thereby affirming the trial court's exercise of jurisdiction. Had the trial court voided the order denying the temporary injunction, the trial court would have been affirming that it did not have subject-matter jurisdiction. Because the trial court has exercised its incidental jurisdiction in this matter and refused to deny its exercise of incidental jurisdiction, the trial court has acquired general jurisdiction in this matter. *Sweeney*, 212 S.W.3d at 564.

II. PLAINTIFFS HAVE JURISDICTION, BECAUSE THE TRIAL COURT FAILED TO CONSIDER ADEQUATELY THAT PLAINTIFFS BRAY AND LITTLEFIELD HAVE INDIVIDUAL STANDING.

In addition, Defendant erroneously argues that Plaintiffs Bray and Littlefield have not suffered a personal injury. Defendant's Brief at 6. Defendant alleges that Plaintiffs do not plead "facts that sufficiently distinguish them from the general public as to the damage alleged." *Id.* at 7. This is wholly inaccurate. Bray and Littlefield are descendants of Confederate veterans and are members of the Texas Division, Sons of Confederate Veterans, Inc. (SCV). Bray's and Littlefield's personal affiliations with this Civil War commemorative organization works to preserve historic memory and events that are distinguished from those of the general populace. The SCV has only about 2,800 members in Texas of a general population of about 27 million. SCV members comprise a mere 0.01% of the Texas population. Only 2800 people in Texas have distinguished themselves from the general population to contribute to this historic project to commemorate and honor their own personal family stories through re-enacting historic events, remembering significant persons, and preserving monuments. The SCV works to ensure the maintenance of graves and cenotaphs of American

war dead that the general populace does not know about, does not care about, and often misconstrues. Bray and Littlefield have not merely suffered personal injuries, due to the University's removal of the Davis monument to the Civil War, but more accurately unique injuries due to their own direct family participation in historic events that the Davis monument commemorates. This personal, actual injury is concrete and particularized and establishes the first prong of the *Abbott* test for individual standing. *Abbott v. G.G.E., et al.*, 463 S.W.3d 633 (Tex. App.—Austin Apr. 30, 2015).

Bray's and Littlefield's personal injuries are fairly traceable to Defendant's unlawful conduct, because the University illegally removed the Davis and Wilson monuments, as will be shown below and has been shown in Plaintiff's Brief, completing the second prong of the test for individual standing. *Id.* Plaintiffs' injuries are likely to be redressed by the requested relief, sufficing the third prong of the test for individual injury. *Id.* The trial court failed to adequately consider Plaintiffs' individual standing in the matter, which provides the trial court

with jurisdiction.

III.  PLAINTIFFS HAVE TAX-PAYER STANDING BECAUSE DEFENDANT VIOLATED FEDERAL AND STATE LAW IN REMOVING THE MONUMENTS.

A.  Defendant's Removal of the Monuments Violated the Terms of the Littlefield Bequest.

Defendant erroneously argues that President Fenves had "full authority to remove, relocate, or alter the statues in question." Defendant's Brief at 8. Defendant provides a disingenuous construction of Maj. Littlefield's Will that proposes "the President of the University is authorized to change the location of the statues, so long as they are given prominence wherever they are located." *Id.* at 9. The testator's intent was never to retain authority in the University President in perpetuity as to the location of the monuments, and such allegation is not merely spurious, but also purposefully misleading.

Maj. Littlefield's Will expressly provided for the veterans monuments to be placed on the University's South Mall and no where else. The Will states: "The arrangement given here is

suggested to the committee as being the best; however, they are authorized to change it or the design suggested if they wish, giving prominence however to the statues of the men named above." (CR 212).

The testator authorized changes to the arrangement or the design of the monuments, not to the site of the monuments. The phrase "place of prominence" refers to a prominent place within the design. The Will makes provision of a grand arch, which was modified into the Littlefield Fountain and the accompanying veterans' monuments. *Id.* Thus, Maj. Littlefield provided authorization to modify the arrangement of the monuments on the same site that everyone involved in the project had always and only contemplated. For instance, the design of the arch was changed into a fountain, but the placement was on the same site as the arch. The University recently moved one outdoor monument to an indoor location a mile and a half away from all other monuments in the complex. The second monument was removed with no plans for its return or other use. The University's assertion that it can dismember monuments of a

single complex and scatter them categorically extinguishes the testator's intent in his Will.

Moreover, the testator gave authorization to a design committee. *Id.* The three-member committee was expressly named: Will C. Hogg of Houston, Texas; H.A. Wroe of Austin, Texas; and whoever was the President of the University of Texas at the season of construction and final placement. The testator does not give authorization to the University of Texas, nor to the President alone, nor in perpetuity. The design committee accomplished its purpose and wound down its business, having placed the monument complex in its current location in perpetuity.

The University admits in pre-litigation documents that the only place the testator intended the monuments to be placed was on the South Mall. (CR 179-81). No other location was ever contemplated by anyone involved in the design, construction, and placement of the monuments. *Id.* The testator's and donor's intent as expressed in his Will, the sculptor's design as expressed in his plans, and the architect's placement as expressed and

realized in the present landscape of monuments from the Main Building to the Littlefield Fountain point to the fact that these veterans' monuments were always and only intended to be placed prominently on the University's South Mall and nowhere else. (CR 179).

Even if Defendant did have authority to remove the monuments, such authority in the Littlefield Will does not exempt Defendant from the requirements of federal and Texas law that protects veterans' monuments.

> **B. Defendant's Removal of the Davis and Wilson Monuments Violated the Veterans Memorial Preservation and Recognition Act (18 U.S.C. § 1369).**

The Davis and Wilson monuments were dedicated to American veterans, as provided under 38 U.S.C. § 1501(3). Defendant's removal of the Davis and Wilson monuments violated the Veterans Memorial Preservation and Recognition Act:

> (a) Whoever, in a circumstance described in subsection (b), willfully injures or destroys, or attempts to injure or destroy, any structure, plaque, statue, or other monument on public property commemorating the service of any person or persons in the armed forces of the United States shall be fined under this title,

imprisoned not more than 10 years, or both.

(b) A circumstance described in this subsection is that
(1) in committing the offense described in subsection (a), the defendant travels or causes to travel in interstate or foreign commerce, or uses the mail or an instrumentality of interstate or foreign commerce. . . .

18 U.S.C. § 1369.

Defendant willfully injured the Davis and Wilson monuments by illegally removing the monuments from public view on the University's South Mall. Defendant unlawfully removed the monuments from public view. The monuments commemorated the service of two persons in the Armed Forces of the United States, the Commanders-in-Chief of American Armies.

In unlawfully removing the monuments, Defendant used the mail or other instrumentality of interstate commerce, including but not limited to e-mail or other forms of electronic communication, to communicate with and enter into a contract with Jerome Patrick Sheehy of Vault Fine Art Services, who removed the veterans' monuments. (RR 2:95-97).

Defendant violated the Veterans Memorial Preservation and Recognition Act by entering into a contract via the mail or

other instrumentality of interstate commerce and injured the Davis and Wilson monument by removing them. This violation of federal law, paid for with the expenditure of public funds, gave the trial court jurisdiction by means of the taxpayer exception to standing.

The Court's consideration of the Veterans Memorial Preservation and Recognition Act is an issue of first impression.

C. Defendant's Removal of the Davis and Wilson Monuments Violated the Texas Government Code, Sections 2166.501 and 2166.5011.

Statutes related to the same general subject matter and with the same general object or purpose are *in pari materia*. *Texas State Bd. of Chiropractic Examiners v. Abbot*, 391 S.W.3d 343, 348-50 (Tex. App.—Austin 2013, no pet.); *see also* 4 William V. Dorsaneo III, *Texas Litigation Guide* § 4.05[2]. Whenever possible, statutes *in pari materia* should be construed in the same light in order to give full effect to their legislative intent. *Dealers Electrical Supply Co. v. Scoggins Construction Co., Inc.*, 292 S.W.3d 650, 658 (Tex. 2009). Courts are also governed *in pari materia* in construing subsections of the same legislative

act. *Dutcher v. Owens*, 647 S.W.2d 948, 949-51 (Tex. 1983). Even where statutes are not *in pari materia*, courts will generally construe statutes on the same subject matter to harmonize them. *La Sara Grain v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex. 1984).

Where both general and specific statutes cover the same subject matter, the specific statute is a special law that constitutes only a part of the legislative jurisdiction and is probably covered by the general statute. *Rodeheaver v. Alridge*, 601 S .W.2d 51, 54 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). Specific rules for the construction of general and specific statutes apply. 4 Dorsaneo § 4.05[2].

Here, the subsections of the Monument Protection Act are not examples of conflicting general and specific statutes, but examples of complementary statutes, whose construction should be harmonized. Subsection 501 concerns the identification, and subsection 5011 concerns the identification and protection of veterans' monuments. Since no conflict, but overlap between subsections exists, the Court should harmonize the two

subsections and construe them as a whole.

The subsection 2166.501, on Monuments and Memorials, defines veterans' monuments as:

> (a)   A monument or memorial for Texas heroes of the Confederate States of America or the Texas War for Independence or to commemorate another event or person of historical significance to Texans and this state may be erected on land owned or acquired by the state or, if a suitable contract can be made for permanent preservation of the monument or memorial, on private property or land owned by the federal government or other states.

The second subsection, 2166.5011, Removal, Relocation, or

Alteration of a Monument or Memorial, defines veterans'

monuments as:

> a) In this section, "monument or memorial" means a permanent monument, memorial, or other designation, including a statue, portrait, plaque, seal, symbol, building name, or street name, that:
> (1) is located on state property;  and
> (2) honors a citizen of this state for military or war-related service.
> (b)  Notwithstanding any other provision of this code, a monument or memorial may be removed, relocated, or altered only:
> (1)  by the legislature;
> (2)  by the Texas Historical Commission;
> (3)  by the State Preservation Board;  or
> (4)  as provided by Subsection (c).

Using the rule of statutory construction of *in pari materia*

and harmonizing the two adjacent subsections, the definition of a monument should reasonably be:

A permanent monument, memorial, or other designation, including a statue, portrait, plaque, seal, symbol, building name, or street name that: (1) is located on federal, state, or private property, and (2) honors a citizen of this state for military or war-related service, or a person of historic significance to Texans and this state, including but not limited to (1) Texas heroes of the Confederate States of America, (2) the Texas War for Independence, or (3) to any other event of historic significance to Texans and this state.

Using this harmonization of subsections, when Defendant removed the monuments without authorization from a competent state agency with authority to remove monuments, violated the Texas Monument Protection Act. The Davis monument was a permanent monument or statue, located on state property that honored a person of historic significance to Texans and this state. The Wilson monument was a permanent monument or statue, located on state property that honored a

person of historic significance to Texans and this state.

Defendant's expenditure of government funds to remove the monuments without proper statutory authority violated the Monument Protection Act and provided the trial court with jurisdiction in this matter.

Defendant ignored the terms of the Littlefield Bequest in removing the Davis and Wilson monuments; Defendant entered into a contract through an instrumentality of interstate commerce, expending public funds to do so, and violated federal law designed to protect veterans' monuments and Texas law to protect veterans' and historic monuments. Defendant's illegal expenditure of public funds in violation of law gives Plaintiffs' taxpayer standing in this matter as an exception to the general rule to show a particularized injury for standing.

IV. PLAINTIFFS HAVE JURISDICTION, BECAUSE THE TRIAL COURT FAILED TO CONSIDER ADEQUATELY THAT THE SONS OF CONFEDERATE VETERANS, INC., HAS ASSOCIATIONAL STANDING.

Defendant erroneously contends that this Court should use the test used in *Texas Association of Business v. Texas Air*

*Control Board* in the instant matter.  852 S.W.2d 440, 447 (Tex. 1993).  Defendant's Brief at 9.  *Texas Association of Business (TAB)* is distinguished from this matter, because *TAB* concerned a business association, charged with civil penalties, sought a declaratory judgment challenging the enabling statutes of two state agencies as conflicting with the open courts and jury trial provisions of the Texas Constitution.  Here, in contrast, we have a non-profit organization attempting to enjoin a state institution of higher education from violating state and federal law and then seeking declaratory judgment of these violations.  The general test for associational standing is appropriate here, because the purpose and interests of the SCV are the same as those of Bray and Littlefield.  Defendant's attempt to utilize a test for standing from a precedent is irrelevant absent Defendant's showing that his proposed test is applicable to the instant matter.  The facts from *Texas Association of Business* require the use of a standing analysis materially distinguishable from the facts in the instant matter.

SCV and Defendant have a real controversy as to the

placement of the veterans' monuments that will be actually determined by the Court's declaratory judgment as to whether the monuments were illegally removed. These two elements of the general associational standing test were met, which afforded the trial court jurisdiction.

> V. FEDERAL PRECEDENTS RELATIVE TO THE PURPOSE AND EFFECT OF MONUMENTS CAN BE CONSTRUED TO PROVIDE THAT'S REMOVAL OF THE MONUMENTS WAS UNLAWFUL AND AFFORDs JURISDICTION TO THE TRIAL COURT.

In *Van Orden v. Perry*, the U.S. Supreme Court handed down an opinion affirming the constitutionality of the Ten Commandments monument at the Texas Capitol in Austin. 545 U.S. 677, 697-98 (2005). The court used the legal-judgment test to determine whether a passive monument violates the Establishment Clause of the federal Constitution. *Id.* at 700. A court "must take account of context and consequences measured in light of [the] purposes" of the Establishment Clause. *Id.* (J. Rehnquist). Subsequent courts have applied the *Van Orden* test, the *Lemon* test, *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971), or a hybrid of both. *American Humanist Association v.*

*Maryland-National Capitol Park and Planning Commission*, No. DKC-14-0550 (D. Md. Nov. 30, 2015).

The very recent case of *American Humanist* was handed down on November 30, 2015, after plaintiffs filed their brief. *American Humanist* provides the most thorough analysis of a veterans' monument using both *Van Orden* and *Lemon* tests to determine whether a veterans' monument had a religious purpose or effect. Plaintiffs applied to amend their brief subsequent to filing, because plaintiffs felt a duty to the court to inform as to this pertinent case.

The monument at issue in *American Humanist* was a 20-foot-high cross, placed at a major highway intersection. *Id.* The monument was placed by the American Legion, a prominent veterans' organization and had been present since 1919. *Id.* The monument was placed on city property. *Id.* The monument was dedicated to the slain American soldiers of World War I, the Secretary of the Navy was the keynote speaker at the monument's dedication, and the monument has been used to commemorate veterans ever since the dedication. *Id.* The

monument has been marked with express wording that the monument was dedicated to veterans and soldiers. *Id.* Other monuments in the park with the memorial cross were also dedicated and used to commemorate veterans. *Id.*

The American Humanist Association brought suit against the public landowner of the park and cross in 2014.[1] *Id.* The association alleged that the cross had a predominant purpose and primary effect that endorsed religion rather than promoted the commemoration of veterans and war dead. The issue as to what the purpose and effect of an expressly constructed veterans' monument is pertinent to the instant matter.

Plaintiffs have reviewed other U.S. Supreme Court cases that have followed *Van Orden's* test for passive monuments,

---

[1] Title to the land was at some point transferred to the state. *Id.*

[2] Most of the inscriptions on the monument complex are not in the record.

[3] The citation certainly applies to the seventeen monuments and twenty-one historical monuments on the Capitol grounds; however, plaintiffs suggest that because the University South Mall was physically aligned with the dome of the Texas Capitol, the free space along University Avenue, the Littlefield Fountain, the other South Mall veterans' monuments, and the Texas Tower, the University aesthetically and culturally aligned itself and the Littlefield monuments as an extension of the commemorative effect of the Capitol monuments that compose Texas identity. Just such a commemorative extension was created on the National Mall in Washington, D.C., when Washington planners built the Lincoln Memorial and extended the Mall by one mile to the Memorial. Indeed, the building of the Littlefield

including: *Utah Highway Patrol Association v. American Atheists, Inc.*, 132 S.Ct. 12 (2011) (whether memorial crosses along Utah highways for state troopers killed in the line of duty impermissibly endorsed religion); *Salazar v. Buono*, 559 U.S. 700 (2010) (whether a cross on a mountain park impermissibly endorsed religion); *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009) (whether a city could permissibly exclude a monument to Summum from a park with other monuments).

The veterans' monuments at the University of Texas at Austin and their commemorative expression of veterans' sacrifices can be identified under modified *Van Orden* and *Lemon* tests. These federal determinations of the purpose and effect of veterans' monuments would most likely construe the University's removal of the veterans' monuments as violations of law that have conferred jurisdiction on the trial court.

A monument on public land is a veterans' monument, if it was erected with the predominant purpose of commemorating one or more, named or unnamed, American or Texas veterans and the monument has the primary effect of commemorating such

American or Texas veterans.

The predominant purpose of a monument shall be determined by considering the circumstances of construction and design of the monument; payment for land, materials, and work of the monument; the monument's express purpose, as evidenced by inscriptions on or near the monument itself; and contemporaneous reports of the construction and dedication of the monument.

The primary effect of the monument shall be determined by whether an informed, reasonable observer would view the monument as commemorating American or Texas veterans. An informed, reasonable observer is aware of the purpose, context, and history of the events giving rise to the commemoration expressed through the monument. The issue is not whether any person might be offended by the monument, nor whether some people might be offended, but rather what would the informed, reasonable person think about the monument.

The primary effect of the monument is determined by the prima facie writing or engravings on or near the monument,

whether the monument expressly memorializes service members, whether the monument is placed singly or in a complex with other monuments or structures as a whole and what the complex expresses, what uses the monument—and its complex if placed within one—has been put, and how long the monument has stood.

The predominant purpose of the University monuments was to commemorate American and Texas veterans. The Davis monument is undisputed to be a monument to a Confederate veteran. In an act of national reconciliation, Congress declared that Confederate veterans are American veterans. 38 U.S.C. § 1501(3). Jefferson Davis, as Commander-in-Chief of the Confederate Armies, is an American veteran of the Civil War and an American veteran and hero of the Mexican War. Woodrow Wilson, as Commander-in-Chief of the American Armies in World War I, is also an American veteran.

The construction of the monuments was funded and designed by a private benefactor of the University of Texas, George Washington Littlefield, who had as his primary, express purpose to commemorate American history, but especially the

American Civil War. (CR 210-12, 235). The University admits that Maj. Littlefield created the monuments in order for "students to honor in a solemn place those who had hitherto served and died in the nation's wars.". . . (CR 180). In addition to the monuments, Maj. Littlefield bequeathed the funds for the purchase of scholarly materials on the history of the South, the endowment of a scholarly chair in American history, and the publication of a volume on American history. *Id.* All these individual bequests are provided for in a single paragraph of Maj. Littlefield's Will, paragraph no. 1 of the thirty-six paragraphs in the Will. *Id.* The circumstances of the design and construction of the monument support the claim that the Jefferson Davis and Woodrow Wilson monuments were established to commemorate American veterans of the Civil War and World War I.

Maj. Littlefield donated the funds for the design and construction of the monuments, and he did so expressly to commemorate American and Texas veterans. (CR 210-12, 235).

Inscriptions on the pedestals of the monuments expressly commemorate Jefferson Davis and Woodrow Wilson as

commanders-in-chief of American Armies in the Civil War and World War I, respectively. (CR 176). Further inscriptions commemorate Davis and Wilson for their service to the United States and the nations of the world.

Contemporaneous reports of the construction and dedication of the monuments are not in the record.

The evidence on the record supports plaintiffs' claim that the Davis and Wilson monuments' primary purpose is to commemorate American veterans of the Civil War and World War I.

The primary effect of the monuments has been to commemorate American and Texas veterans. An informed, reasonable observer would view the monuments as commemorating American and Texas veterans. The prima facie inscriptions on the monuments commemorate American and Texas veterans. One of the inscriptions around the Littlefield Foundation reads:

> To the men and women of the Confederacy who fought with valor and suffered with fortitude that states' rights be maintained and who, not dismayed by defeat nor discouraged by misrule, builded [sic] from the ruins of a

devastating war a greater south.  And the men and women of the nation who gave of their possessions and of their lives that free government be made secure to the people of the earth this memorial is dedicated.[2]

(CR 181).

Inscriptions on monument pedestals above the fountain further commemorate individual veterans, (CR 179):  Robert E. Lee, Commander of the Army of Northern Virginia; and General Albert Sidney Johnston, Commander of the Army of Tennessee.

The complex of monuments on the University's South Mall includes the buildings surrounding the statues and extends to the Texas Capitol.  From the Texas Tower and UT Main Building, to the Biblical inscription that "Ye Shall Know the Truth and the Truth Shall Set You Free," to the monument to George Washington, Commander-in-Chief of the Revolutionary Armies, through the Littlefield veterans' monuments, the Littlefield Fountain, and to the Texas Capitol and Capitol monuments, the entire complex of University and Capitol is placed as a single complex.  The complex comprises the largest museum of free-standing sculpture in Texas, and the purpose of the UT-Capitol

---

[2] Most of the inscriptions on the monument complex are not in the record.

Monument Complex is to commemorate the "people, ideals, and events that compose Texan identity."[3] *Van Orden*, 545 U.S. at 681; Tex. H. Con. Res. 38, 77th Leg. (2001). The people, ideals, and events that compose Texas identity as evidenced by the Capitol monuments extends to the Littlefield veterans' monuments. The removal or defacing of one of the monuments impairs the complete expression of the assembled Texas monuments. If each monument in the Capitol-UT complex is a page in a book that physically expresses one event in Texas history, whether tragedy or triumph, the removal of even one monument is an erasure of Texas history that should not be countenanced by this Court.

The Littlefield monuments have stood at the University for

---

[3] The citation certainly applies to the seventeen monuments and twenty-one historical monuments on the Capitol grounds; however, plaintiffs suggest that because the University South Mall was physically aligned with the dome of the Texas Capitol, the free space along University Avenue, the Littlefield Fountain, the other South Mall veterans' monuments, and the Texas Tower, the University aesthetically and culturally aligned itself and the Littlefield monuments as an extension of the commemorative effect of the Capitol monuments that compose Texas identity. Just such a commemorative extension was created on the National Mall in Washington, D.C., when Washington planners built the Lincoln Memorial and extended the Mall by one mile to the Memorial. Indeed, the building of the Littlefield Monuments coincided with the construction of veterans' monuments across the country.

eighty-four years. While individuals have expressed dismay at the presence of the veterans' monument, the University has undertaken no action to remove the monuments until Pres. Fenves recently took office. Indeed, the University elected to accept the benefits of the Littlefield bequest ninety-five years ago. The Davis and Wilson monuments have reached the age of antiquity for monuments in Texas, and their uncontested acceptance, construction, placement, and longevity support the theory that the informed, reasonable observer would think that the monuments' primary effect is to commemorate American and Texas veterans.

Since the predominant purpose and primary effect of the Davis and Wilson monuments is to commemorate American and Texas veterans, the Court should find that the statues are protected under §§ 2066.501 and 2066.5011 of the Texas Government Code.

## PRAYERS

1. Plaintiffs request that this Court reverse the trial court's grant of the plea to the jurisdiction and

remand for a trial on the merits;

2.  Plaintiffs request that this Court order the trial court to apply the proposed Veterans' Monument Protection analysis to preserve the veterans' monuments at issue;

3.  Plaintiffs request that this Court find that Defendant violated the federal Veterans Memorial Preservation and Recognition Act (18 U.S.C. § 1369) and refer this finding to the United States Attorney for the Western District of Texas, Austin Division;

4.  Plaintiffs request that this Court order Defendant to return the Davis and Wilson monuments back to their original pedestals at the University promptly; and,

5.  Plaintiffs ask that the Court award them reasonable attorney fees, costs of court, and such and further relief to which plaintiffs are justly entitled to.

RESPECTFULLY SUBMITTED,

/s/C.L. Ray                       /s/Kirk David Lyons
Texas Bar No. 00000034            Texas Bar No. 12743500
604 Beardsley Lane, Suite 100     Southern Legal Resource Center
Austin, Texas 78746               P.O. Box 1235
Tel.  (512) 328-9238              Tel. (828) 669-5189
Fax  (512) 857-0606               Fax (828) 669-5191
clray4523@hotmail.com             kdl@slrc-csa.org

ATTORNEYS FOR PLAINTIFFS

December 28, 2015


## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word 2011 and contains 5,380 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(3).

/s/C.L. Ray
ATTORNEY FOR PLAINTIFFS
Dated:  December 28, 2015

## CERTIFICATE OF SERVICE

I certify that a copy of Plaintiffs' Brief was served on Pres. Greg L. Fenves, President of the University of Texas at Austin, through counsel of record, Adam N. Bitter, Office of the Texas Attorney General, P.O. Box 12548, Austin, Texas 78711, by e-mail at adam.bitter@texasattorneygeneral.gov and the Court's electronic filing system on December 28, 2015.

/s/C.L. Ray
ATTORNEY FOR PLAINTIFFS